Jason HERNANDEZ,
d/b/a Keller Williams Realty, Inc., as successor
in interest to River North Realty, LLC,
Plaintiff-Respondent,†

v.

BNG MANAGEMENT LIMITED PARTNERSHIP,
Defendant-Appellant.

Court of Appeals

*No. 2011AP362. Oral argument April 3, 2012.
—Decided May 1, 2012.*

2012 WI App 65

(Also reported in 815 N.W.2d 725.)

† Petition for Review.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Scott B. Taylor* of *Urban & Taylor, S.C.*, Milwaukee. There was oral argument by *Scott B. Taylor*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Basil M. Loeb* of *Schmidlkofer, Toth & Loeb, LLC*, Milwaukee. There was oral argument by *Basil M. Loeb*.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. BNG Management Limited Partnership appeals the orders of the circuit court granting judgment to Jason Hernandez after a trial on his claim for real-estate commissions, and denying BNG Management's motion for reconsideration. BNG Management contends that the circuit court should have granted its motion for summary judgment. *See* WIS. STAT. RULE 809.10(4) ("An appeal from a final judgment or final order brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon."). Hernandez wants us to affirm the judgment awarding him damages. We reverse the denial of BNG Management's motion for summary judgment, and vacate the judgment and orders. *See* WIS. STAT. § 808.09.[1]

I.

¶ 2. The essential facts are not disputed, and the parties stipulated to most of them. Hernandez, a real

---

[1] WISCONSIN STAT. § 808.09 provides:

> Upon an appeal from a judgment or order an appellate court may reverse, affirm or modify the judgment or order as to any or all of the parties; may order a new trial; and, if the appeal is from a part of a judgment or order, may reverse, affirm or modify as to the part appealed from. In all cases an appellate court shall remit its judgment or decision to the court below and thereupon the court below shall proceed in accordance with the judgment or decision.

estate broker licensed in both Wisconsin and Illinois, worked for Keller Williams Realty, Inc., in Chicago, and signed a "Buyer Agency Agreement" with BNG Management in mid-February of 2007. As material, the Agreement provided that BNG Management "acknowledges that Keller Williams Realty, exclusively represents BNG for the purpose of the acquisition of" two designated properties in Wisconsin. Under the Agreement, BNG Management promised to pay Keller Williams Realty a commission if BNG Management bought one or both of the properties. The Agreement further provided: "This agreement shall expire and become null and void on February 15, 2008, *or if the property or properties become listed with a broker.*" (Emphasis added.) This clause seems to make sense because once the properties were put on the open market, BNG Management would no longer need Keller Williams Realty's "exclusive[] repre-sent[ation] . . . for the purpose of [their] acquisition."

¶ 3. By a document headed "Exclusive Listing Agreement Sale Transaction" executed by Herbert Kollinger, described as the owner of three designated Wisconsin properties, including the two encompassed by the Agreement between Keller Williams Realty and BNG Management, Kollinger "appoint[ed] Cushman & Wake-field of Illinois, Inc. ("C&W") as its sole agent and grants to C&W the exclusive right to sell" the three properties. Kollinger executed the Listing Agreement Sale Transac-tion with Cushman & Wakefield on June 14, 2007; Cushman & Wakefield signed the document on July 11, 2007. On August 10, 2007, BNG Management bought the two Wisconsin properties designated in its Buyer Agency Agreement with Keller Williams Realty and Hernandez.

¶ 4. All the persons and entities material to this appeal are, apparently, Illinois residents or businesses,

729

except Hernandez, whose complaint says he is a Wisconsin resident. The Buyer Agency Agreement between BNG Management and Keller Williams Realty and Hernandez was executed in Illinois, as was BNG Management's listing agreement with Cushman & Wakefield. Neither Cushman & Wakefield nor any of the persons involved with the sale of the properties that are the subject of this appeal are Wisconsin licensed real-estate brokers.

¶ 5. As noted, Hernandez claims that BNG Management owes him a real-estate commission because BNG Management bought the properties that were designated in the Buyer Agency Agreement. On the other hand, BNG Management contends that by its terms, its Buyer Agency Agreement with Keller Williams Realty and Hernandez became "null and void" before it bought the properties, which was after they were listed by the seller with Cushman & Wakefield, a broker, albeit one not licensed in Wisconsin.

## II.

¶ 6. A party is entitled to summary judgment "if there is no genuine issue as to any material fact" and a party "is entitled to a judgment as a matter of law." WIS. STAT. RULE 802.08(2). We review *de novo* a circuit court's rulings on summary judgment. *Johnson v. Mt. Morris Mut. Ins. Co.*, 2012 WI App 3, ¶ 8, 338 Wis. 2d 327, 332, 809 N.W.2d 53, 56 (Ct. App. 2011). This appeal requires that we apply statutes to contracts, and our review of these matters is also *de novo. See State v. Turnpaugh*, 2007 WI App 222, ¶ 2, 305 Wis. 2d 722, 725, 741 N.W.2d 488, 490 (statutes); *Milwaukee Deputy Sheriffs' Ass'n v. County of Milwaukee*, 2010 WI App 109, ¶ 5, 328

Wis. 2d 231, 236, 789 N.W.2d 394, 397 (contracts). We enforce both statutes and contracts as they are written. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 662, 681 N.W.2d 110, 123–124 (statutes); *Milwaukee Deputy Sheriffs' Ass'n*, 2010 WI App 109, ¶ 5, 328 Wis. 2d at 236, 789 N.W.2d at 397 (contracts).

¶ 7. The circuit court denied the parties' cross-motions for summary judgment, concluding that there were factual issues that needed to be resolved at a trial. Recognizing our *de novo* review, Hernandez wants us to affirm the circuit court's denial of BNG Management's motion for summary judgment, arguing that the "null and void" provision of the Buyer Agency Agreement between him and BNG Management was not triggered by the seller's listing with Cushman & Wakefield because under Wisconsin law only real-estate brokers licensed in Wisconsin may act as a real-estate broker. *See* WIS. STAT. § 452.03 ("No person may engage in or follow the business or occupation of, or advertise or hold himself or herself out as, or act temporarily or otherwise as a broker or salesperson without a license.").

¶ 8. BNG Management contends in part of its argument seeking reversal that we should apply Illinois law because all of the players were either Illinois businesses or residents and the applicable documents were executed in Illinois. Hernandez argues that we should apply Wisconsin law because the properties subject to the commission dispute are in Wisconsin. As Justice Felix Frankfurter observed, however, "[c]onflict-of-law problems have a beguiling tendency to be made even more complicated than they are." *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 169 (1946) (Frankfurter, J., concurring). Luckily, we need not attempt to untangle the knot because we will assume, as

731

Hernandez argues, but not decide, that Wisconsin law applies, because even under Wisconsin law the listing-with-a-broker clause in Hernandez's Agreement with BNG Management defeats his entitlement to the commissions he seeks. *See Berner Cheese Corp. v. Krug*, 2008 WI 95, ¶ 61, 312 Wis. 2d 251, 279, 752 N.W.2d 800, 814 (A court need not resolve a conflict-of-laws dispute when that would not affect the result.).

¶ 9. The only consequences for violating WIS. STAT. § 452.03 by acting as a real-estate broker in Wisconsin without a license are: (1) the violator may not sue in a Wisconsin court for a brokerage commission; and (2) the violator may be subject to criminal penalties. *See* WIS. STAT. §§ 452.20, 452.17(1).[2] Thus, Wisconsin courts have routinely upheld the inability of a non-licensed real-estate broker to recover commissions in our courts because a "contract *for a commission*

---

[2] Wisconsin Stat. § 452.20 reads:

> No person engaged in the business or acting in the capacity of a broker, salesperson or time-share salesperson within this state may bring or maintain an action in the courts of this state for the collection of a commission or compensation for the performance of any act mentioned in this chapter without alleging and proving that he or she was a duly licensed broker, salesperson or registered time-share salesperson at the time the alleged cause of action arose.

WISCONSIN STAT. § 452.17(1) reads:

> Any person who engages in or follows the business or occupation of, or advertises or holds himself or herself out as or acts temporarily or otherwise as a broker or salesperson in this state without a license under this chapter shall be prosecuted by the district attorney in the county where the violation occurs or by the attorney general and may be fined not more than $1,000 or imprisoned not more than 6 months or both.

for [real-estate brokerage] activities is void from its inception," *see Greenlee v. Rainbow Auction/Realty Co.*, 202 Wis. 2d 653, 670, 553 N.W.2d 257, 264 (Ct. App. 1996) (emphasis added). *See also Kemmerer v. Roscher*, 9 Wis. 2d 60, 64, 100 N.W.2d 314, 317 (1960).

¶ 10. Cushman & Wakefield was retained by Kollinger, the properties' seller, not by BNG Management, and Cushman & Wakefield is not seeking a commission in this or, as far as we know, any other Wisconsin state-court action. Thus, the validity of the Kollinger/Cushman & Wakefield listing agreement as between them is not at issue here. Significantly, Wisconsin has never nullified an underlying transaction because the real-estate brokers were not licensed in this state, as Hernandez's lawyer conceded at oral argument.

¶ 11. The crux of this appeal is that Keller Williams Realty and Hernandez agreed to have their Agreement with BNG Management become "null and void" if and when the properties covered by the Agreement were "listed with a broker." No one disputes that Cushman & Wakefield is a "broker" as that word is used in the Agreement, other than Hernandez's contention that we must construe that word to mean a broker licensed in Wisconsin. He cites in support of that contention *Seitzinger v. Community Health Network*, 2004 WI 28, 270 Wis. 2d 1, 676 N.W.2d 426.

¶ 12. *Seitzinger* concerned a physician whose hospital privileges were suspended. *Id.*, 2004 WI 28, ¶ 6, 270 Wis. 2d at 7, 676 N.W.2d at 429. The hospital's bylaws permitted him to have the help of "legal counsel" at a peer review of the suspension. *Id.*, 2004 WI 28, ¶¶ 7–8, 270 Wis. 2d at 8–9, 676 N.W.2d at 430. He wanted the help of a physician who was also a lawyer, albeit one not admitted to practice law in Wisconsin.

733

*Id.*, 2004 WI 28, ¶ 9, 270 Wis. 2d at 10, 676 N.W.2d at 430–431. The hospital interpreted "legal counsel" to mean only those lawyers who were admitted to practice in Wisconsin. *Ibid. Seitzinger* noted that it was not going to review *de novo* whether "legal counsel" per force required that the lawyer the physician wanted to help him had to be one admitted to practice in Wisconsin, but, rather, would give deference to the hospital's interpretation of its bylaws. *Id.*, 2004 WI 28, ¶ 22, 270 Wis. 2d at 15, 676 N.W.2d at 433. After giving the hospital's interpretation that deference, *Seitzinger* determined that the hospital's interpretation of "legal counsel" to mean "legal counsel" licensed to practice in Wisconsin was "reasonable." *Id.*, 2004 WI 28, ¶¶ 22, 27, 36–37, 42, 270 Wis. 2d at 15, 17, 21–22, 24, 676 N.W.2d at 433, 434, 436, 437–438.

¶ 13. *Seitzinger* is inapposite not only because of the deference given to the hospital's interpretation of its bylaws, but also because the hospital was not seeking to undo something the unlicensed lawyer may have done. There is no indication that the hospital could have overturned a peer-review finding in favor of the physician by later claiming that the lawyer helping the physician was not admitted to practice in Wisconsin. Closer is a case that Hernandez does not cite, *Jadair Inc. v. United States Fire Ins. Co.*, 209 Wis. 2d 187, 562 N.W.2d 401 (1997), which held that a corporation's notice of appeal in a large-claim action signed by a nonlawyer was not effective, and thus the court of appeals did not have jurisdiction over the appeal. *Id.*, 209 Wis. 2d at 191, 202–205, 562 N.W.2d at 402–403, 407–408. But applying *Jadair* here to abrogate the "null and void" clause in Hernandez's agreement with BNG Management would also be a bridge too far because *Jadair* recognized the institutional need to have per-

sons who make representations to courts be subject to court oversight and discipline. *See* WIS. STAT. RULE 802.05; *Jadair*, 209 Wis. 2d at 211, 562 N.W.2d at 410–411. Protection of Wisconsin residents from unlicensed real-estate brokers is, as the legislature determined, sufficiently enforced by denying those brokers the right to sue for their commissions in Wisconsin courts and by subjecting them to potential criminal penalties.

¶ 14. Significantly, as *Jadair* pointed out, although the legislature delineated the circumstances when a party could appear by a nonlawyer, it excluded corporations in large-claim actions. *See id*, 209 Wis. 2d at 202, 562 N.W.2d at 407. Here, as we have seen, the legislature specified only two penalties for providing real-estate services in Wisconsin by a person not licensed in Wisconsin. It did not declare that any violation of WIS. STAT. § 452.03 would either nullify the underlying transfer of real estate or negate commission-forfeiture triggers like the one in the BNG Management/Keller Williams Realty Agreement. Nothing would be gained by adding, as Hernandez wants us to do, collateral consequences affecting persons other than the unlicensed real-estate broker.

■■

¶ 15. If Keller Williams Realty and Hernandez wished to further protect themselves in connection with the "null and void" trigger, they could have easily sought to have the Agreement read: "This agreement shall expire and become null and void on February 15, 2008, or if the property or properties become listed with a *licensed Wisconsin* broker." We will not re-write a contract to read the way a party wishes it had been drafted. *See Lynch v. American Family Mut. Ins. Co.*, 163 Wis. 2d 1003, 1013, 473 N.W.2d 515, 519 (Ct. App.

1991); *Hortman v. Otis Erecting Co., Inc.*, 108 Wis. 2d 456, 461, 322 N.W.2d 482, 484–485 (Ct. App. 1982). Simply put, "listed with a broker" means what it says—no more, no less. Since BNG Management bought the properties for which Hernandez seeks a commission after Hernandez's Agreement with BNG Management became "null and void," we reverse the circuit court's denial of BNG Management's motion for summary judgment on that issue. Accordingly, we also vacate the orders awarding Hernandez a commission, and denying BNG Management's motion for reconsideration.

*By the Court.*—Order denying BNG Management's motion for summary judgment reversed; judgment and orders vacated.