COURT OF APPEALS
DECISION
DATED AND FILED

December 21, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2020AP418**

STATE OF WISCONSIN

Cir. Ct. No.  2012FA685

IN COURT OF APPEALS
DISTRICT III

IN RE THE MARRIAGE OF:

BENJAMIN PAUL MEEUWSEN,

PETITIONER-RESPONDENT,

V.

DARCI LYNN MEEUWSEN,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Brown County: MICHAEL T. JUDGE, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in** WIS. STAT. RULE 809.23(3).

¶1    PER CURIAM. Darci Meeuwsen, pro se, appeals postdivorce orders regarding property division.[1]  Darci argues the circuit court erred when it offset amounts that she allegedly owed against equalization payments owed to her by her former husband, Benjamin.  Darci contends that Benjamin's lump sum payment of the entire equalization payment—rather than his payment of that sum over the fifteen years the court permitted—prevented Darci from receiving interest payments over the period.  Darci further argues the court erred by failing to hold a de novo hearing regarding unpaid variable expenses that Darci allegedly owed.  Additionally, Darci argues that the court should never have appointed a guardian ad litem (GAL) to help represent her best interests, while she simultaneously argues that the court erred by failing to accommodate her disability.  We reject these arguments and affirm.

## BACKGROUND

¶2    Darci and Benjamin were married in July 1995.  Benjamin filed for divorce in June 2012, and in December 2013, the circuit court entered a partial divorce judgment pertaining to legal custody and physical placement.  A contested divorce hearing regarding maintenance and property division subsequently took place in 2014.

¶3    The circuit court entered a decision and order addressing those issues on February 26, 2015.[2]  The court awarded $90,000 in yearly maintenance

---

[1] For ease of reading, because the parties share the same surname, we refer to the parties by their given names for the remainder of this opinion.

[2] The Honorable John P. Zakowski presided over the divorce trial and entered the initial Findings of Fact, Conclusions of Law and Judgment of Divorce.  The Honorable Michael T. Judge presided over the remainder of the divorce proceedings.

to Darci, for a period of five years. With respect to property division, the court awarded to Benjamin the family business with a stipulated value of $2.64 million, and ordered Benjamin to begin making property division equalization payments to Darci in the total amount of $1,298,697 after completion of the five-year maintenance period. In addition, Darci was awarded the marital residence and cottage. The court further ordered that Benjamin pay the full amount of the equalization payment within fifteen years after the maintenance payments were completed. A "floor" payment of $53,000 was ordered to be paid each year, with interest accruing on the unpaid balance at the rate of three percent per year commencing when the first equalization payment was due in March 2020. Benjamin was also ordered to pay all additional profits derived from the family business every year. Benjamin's attorney was directed to draft a judgment consistent with the court's February 26 order. A supplemental divorce judgment was entered on March 5, 2015.[3]

¶4     At an October 2015 hearing, the circuit court, on its own motion under WIS. STAT. § 806.07 (2019-20),[4] revisited three issues arising from the divorce judgment to rectify "mistakes in its original decision." Specifically, the court: (1) amended the interest rate on the equalization payments from three to five percent; (2) provided a mechanism to secure the equalization payments;

---

[3] Darci filed a notice of appeal from the divorce judgment on August 19, 2015. By order dated October 12, 2015, we dismissed that appeal, No. 2015AP1715, concluding we lacked jurisdiction to review the divorce judgment due to the untimely filing of the notice of appeal. An additional appeal resulted in an unpublished opinion dated May 23, 2017, affirming each of the circuit court's decisions. *See Meeuwsen v. Meeuwsen*, No. 2015AP2578, unpublished slip op. (WI App May 23, 2017). A third appeal, No. 2016AP1223, was dismissed for lack of jurisdiction.

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

and (3) ordered Benjamin to provide Darci with financial information, including quarterly financial statements. Thereafter, Benjamin filed a motion seeking to enforce provisions of the divorce judgment, including that Darci pay her required variable expenses and requiring her to refinance the mortgages for the two pieces of real estate that she received under the divorce judgment.

¶5      In January 2019, a family court commissioner entered an order awarding Benjamin $18,438.03 for unpaid variable expenses that Darci had been responsible for paying. The circuit court later confirmed the amount in a March 2019 order. Shortly thereafter, based on Darci's allegation that she is disabled and unable to appear or represent herself during hearings, the court entered an order appointing a GAL for Darci "to [e]nsure that [Darci's] best interests are adequately represented."

¶6      In September 2019, the circuit court noted that with the interest on the equalization payment balance accruing at 5% per annum, the $53,000 annual equalization payments ordered as part of the divorce judgment would pay for only a portion of the interest and pay nothing toward the principal balance due. The court therefore reduced the interest on the equalization payments to 3.5% per annum to be more in line with what the court had originally intended in the divorce judgment.

¶7      In a November 2019 order, the circuit court discharged the GAL based on a request Darci made through her power of attorney—her mother, Anita Leatham. The September 2019 order was then vacated. The circuit court entered an order that the parties pay $5,198.85 in already incurred GAL fees "from real estate sale proceeds and as determined by further order of the court." On January 10, 2020, the court issued a decision stating:

> This court, therefore, reaffirms the original Judgment, Decisions and Order of Judge Zakowski in that Ben shall pay commencing March 1, 2020, an annual floor payment of $53,000 plus the annual profits of the Fourinox Corporation which cannot be determined until the end of the 2020 tax year, interest at 5% shall accrue but is not required to be paid on an annual basis.
>
> Further, the parties have disputes as it concerns variable expense payments and sale of parcels of real estate. When and if the parties wish to address these issues, please call my judicial assistant to schedule a hearing in that regard.

¶8      In February 2020, the circuit court amended its January 10, 2020 order. In June 2020, however, the court issued a subsequent decision and order vacating the February 2020 order and reinstating its January 10, 2020 order in full as follows:

> a. Although interest shall accrue on the equalization payment as set forth in Judge Zakowski's Order dated November 20, 2015, Benjamin is not obligated to make any additional monthly payment towards accrued interest. All such accrued-interest payments shall be made via [the family business's] net profit payments. Any additional monthly payment obligation set forth in the Court's February 24 Decision and March 12 Order are vacated. By way of clarification, the Court's prior orders that Benjamin make monthly equalization payments in the amount of $7,500 are hereby vacated and of no further force or effect.
>
> b. As set forth in Judge Zakowski's original March 2015 Decision, Benjamin's minimum annual payment obligation is $53,000 plus all net profits from [the family business]. Subject to the provisions set forth below in Subsections 2.c and 2.d, Benjamin shall make his minimum monthly payments via wage assignment to the Wisconsin Support Collections Trust Fund, P.O. Box 74200, Milwaukee, Wisconsin 53274-0200. Benjamin's minimum annual payments of $53,000 shall be made in the amount of $2,038.46 per biweekly pay period. Benjamin's annual net profit payments shall be made promptly each year following the closing of [the family business's] preceding year's books.

5

Thereafter, Leatham filed a UCC Financing Statement with the Wisconsin Department of Financial Institutions attempting to record a lien against Benjamin and his current wife's property. The court ultimately ordered the UCC lien stricken and expressly limited any liens "to the terms of the divorce judgment."

¶9 In November 2020, in an effort to end the ongoing discord, Benjamin claimed that he was able to secure sufficient financing to "pay off his entire equalization payment." Darci now appeals. Additional facts are included in the discussion below.

## DISCUSSION

¶10 As an initial matter, Benjamin argues that his payment in full of the property division equalization payments renders moot any issues regarding the amount of monthly equalization payments due. We generally do not consider moot issues. *State ex rel. Olson v. Litscher*, 2000 WI App 61, ¶3, 233 Wis. 2d 685, 608 N.W.2d 425. An issue is moot when its resolution will have no practical effect on the underlying controversy. *Id.* The record on appeal, however, is entirely unclear as to whether the circuit court approved the full payment with offsets, as articulated by Benjamin. Given the uncertainty in the record, we assume without deciding that the issues regarding the manner and amounts of the equalization payments are not moot.

¶11 The division of property and the determination of maintenance in a divorce proceeding are within the circuit court's discretion, and we will not disturb the court's determinations unless the court erroneously exercised its discretion. *LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789. We will uphold a circuit court's discretionary decision as long as the court examined the relevant facts, applied a proper standard of law, and used a demonstrated rational

process to reach a reasonable conclusion. *Id.*, ¶13. Because the notion of discretion is fundamental to the circuit court's ability to fulfill its role in the legal system, we will search the record for reasons to sustain its exercise of discretion. ***Roy v. St. Lukes Med. Ctr.***, 2007 WI App 218, ¶11, 305 Wis. 2d 658, 741 N.W.2d 256.

¶12    Turning to the merits, Darci argues[5] that the circuit court violated WIS. STAT. § 767.59(1c)(b) by modifying the property division after the divorce judgment was entered. She argues that the while the court "does have authority to construe ambiguities" in the divorce judgment, interpretation of the judgment is a matter of law, not an exercise of discretion. More specifically, Darci asserts that the court erred in modifying the amount of interest payable on the equalization amount and then modifying the terms of Benjamin's payment. Darci further asserts that the divorce judgment was ambiguous, in that it was subject to two different interpretations, and that the court misinterpreted it as requiring a base payment of $53,000 per year, plus all of Benjamin's corporate profit. Darci instead claims that the court's reference that the equalization payment will be in the form of a "15 year mortgage" meant the amount payable must be amortized with interest over fifteen years.

---

[5] Darci fails to fully develop many of her arguments and her brief lacks many necessary record cites. We are not required to sift through the record for facts to support Darci's argument; rather, it is Darci's responsibility to provide proper references to the record. *See **Keplin v. Hardware Mut. Cas. Co.***, 24 Wis. 2d 319, 324, 129 N.W.2d 321 (1964); *see also* WIS. STAT. RULE 809.19(1)(e). Additionally, it is unclear from what orders Darci appeals. Benjamin asks this court to dismiss Darci's appeal for the above reasons. However, because we generally provide pro se litigants a degree of leeway in complying with the rules expected of lawyers, we decline to do so. *See **Rutherford v. LIRC***, 2008 WI App 66, ¶27, 309 Wis. 2d 498, 752 N.W.2d 897.

¶13    Darci's citations to the record and authority are inaccurate. In the original divorce judgment, the circuit court ordered:

> The court therefore orders that the equalization payment of $1,298,878 be paid from [Benjamin] to Darc[i] by having [Benjamin] pay a minimum amount of $53,000 each year and all profits from [the family business] to her every year beginning March 1, 2020. Interest is to accrue on the unpaid balance at 3% per year. Full payment is due and payable within 15 years, or by February 1, 2036. The equalization payment will thus be in the form of a 15 year mortgage (Current interest rates on a 15 year mortgage are near 3%). Interest does not begin to accrue until the first payment in March 2020. Thus for five years [Benjamin] pays nothing on the buyout while paying maintenance.

Darci argues that the court's use of the term "mortgage" was meant to reflect the court's intention that the equalization payment be fully amortized, including the accruing of interest. The divorce judgment, however, does not contain any provision requiring that the equalization payment be fully amortized or that it cannot be paid off in full sooner. In fact, the court's order identified that the payments occur over no more than fifteen years, not that they last a duration of fifteen years. While Darci may disagree with the result, her disagreement alone does not establish an erroneous exercise of discretion. *See **Reinders v. Washington Cnty. Sch. Comm.**,* 15 Wis. 2d 517, 526, 113 N.W.2d 141 (1962). The court ultimately modified its postdivorce orders concerning the interest rate payable and manner of the equalization payment to those ordered in the divorce judgment. Thus, the court order did not modify the divorce judgment property division as it reinstated the original order.

¶14    Darci also claims that the circuit court erred in allowing Benjamin "to deduct from [Darci's] property division payments to pay the GAL fee … and then pay himself for … variable expenses [Benjamin] had filed against Darci."

8

We disagree. The court retained the original property division, and the offsets were ordered to ensure that all of the obligations of each party were followed. When Darci failed to pay the amounts due and the resulting outstanding judgment negatively affected Benjamin's credit and ability to borrow the money to fund the equalization payments, the court properly ordered the fees and judgment to be offset. Nothing about the credits the court granted with regard to the equalization payments reduced Darci's net receipt under the property division. Rather, the offsets merely allowed for partial distribution of Darci's equalization payments to her creditors as required under the various, already existing garnishment orders. Accordingly, the court did not erroneously exercise its discretion in this regard.

¶15 Darci next argues that the circuit court erred by failing to hold a de novo hearing regarding the unpaid variable expenses that she allegedly owed. Darci further claims she opposed the amount of variable expenses sought by Benjamin in his August 1, 2018 motion.

¶16 The operative order regarding Darci's unpaid variable expenses due to Benjamin was filed on January 23, 2019, and it related to expenses incurred during the period between March 15, 2018, and August 21, 2018. The March 2019 order of the family court commissioner—following the January 2019 order—recognized that the variable expenses issue had already been litigated at least twice before and confirmed the amount of variable expenses due. Darci, however, did not file a formal request for a de novo hearing on the variable expenses issue until June 23, 2019, several months after the family court commissioner entered the January 2019 order and well past the thirty-day deadline

established in the Brown County Circuit Court local rules.[6]  As such, the circuit court did not err by failing to hold a de novo hearing on the issue of variable expenses.

¶17     As to Darci's claim for variable expenses due from Benjamin, she argues that at a June 27, 2019 hearing, the circuit court erred when it "did not want to hear the motion and moved on to other issues."  She asserts that Brown County has no mechanism to address de novo review of the variable expenses issue.

¶18     A hearing was held on February 17, 2020, to address the variable expenses issue.  During that hearing, the circuit court addressed several matters, including the outstanding joint real estate mortgages and variable expenses. Benjamin's counsel specifically addressed the issue of variable expenses.  When asked to respond to the variable expenses issue, neither Darci nor her power of attorney chose to address the issue.  In spite of notice that the issue of variable expenses would be considered and the court's invitation for Darci to address the issue at the hearing, Darci declined to comment.  Under the circumstances, Darci has waived any quarrel regarding the variable expenses issue by failing to address it despite the court's invitation.  *See Gedicks v. State*, 62 Wis. 2d 74, 84, 214 N.W.2d 569 (1974) ("The right to object on appeal to what was not objected to initially, at time of trial, is waived.").  Because Darci has waived any complaint regarding the court not addressing her motion on variable expenses, we need not address her complaint that Brown County has no mechanism to address a de novo review of a court commissioner's variable expense decision.

---

[6]  *See* BROWN CNTY. CIRC. CT. R. 812.

¶19    Finally, Darci argues that the circuit court should never have appointed a GAL to help represent her best interests, while she simultaneously argues that the court erred by failing to accommodate her disability. Darci asserts that the court's appointment of a GAL violated the Americans with Disability Act (ADA), and that the court's decision to revoke previous permission allowing Leatham to act as Darci's lay advocate violated her rights to a reasonable accommodation.

¶20    Darci provides no relevant authority for her position, and her argument is underdeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). We cannot determine if the circuit court somehow erred in appointing a GAL or violated Darci's rights under the ADA without more information about the nature and extent of her claimed disability. If Darci was truly unable to represent herself and needed assistance, the court very appropriately appointed a GAL. Following Darci's persistent objections, the GAL was discharged. The fact that Darci no longer wanted the GAL's assistance does not mean the court erred in the initial appointment

¶21    Further, and contrary to Darci's wishes, her mother cannot represent her in a court of law as Leatham is not an attorney. The law on this issue is quite clear: "Every person who appears as agent … for or on behalf of any other person … shall be deemed to be practicing law within the meaning of this section." WIS. STAT. § 757.30(2). Only individuals in possession of "a license to practice law as an attorney of a court of record in this state" are permitted to practice law in the State of Wisconsin. Sec. 757.30(1). The primary purpose of Wisconsin's unauthorized practice of law statutes is "to assure that the public is not put upon or damaged by inadequate or unethical representation." *Littleton v. Langlois*, 37 Wis. 2d 360, 364, 155 N.W.2d 150 (1967).

¶22 In addition, the record is clear that Leatham acted improperly by filing a UCC Financing Statement with the Wisconsin Department of Financial Institutions in an attempt to record a lien against Benjamin and his current wife's property. The circuit court addressed the issue in its July 23, 2020 order prohibiting Leatham "from further appearing on behalf of [Darci]." Based on the foregoing, the court committed no error, and, instead, appropriately exercised its discretion. Accordingly, we affirm.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.